IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL J. LANGSTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-20-435-SPS |

# OPINION AND ORDER

The claimant Michael J. Langston requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 36). He completed the eleventh grade and has worked as a tow truck driver, mud logging operator, and farm mechanic (Tr. 21, 180). The claimant alleges that he has been unable to work since November 16, 2018, due to a disc bulge in his lower back, hypertrophic spurring, bilateral neural foraminal stenosis, mild canal stenosis, broad based left paracentral foraminal stenosis, and degenerative disc disease (Tr. 179).

### Procedural History

On January 10, 2019, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Toni Shropshire held an administrative hearing and determined the claimant was not disabled in a written opinion dated May 7, 2020 (Tr. 15-23). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found at step four that the claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, and that he could not climb ladders and must avoid hazards such as

unprotected heights or moving mechanical parts (Tr. 18). The ALJ then concluded that the claimant could not return to his past relevant work, but that he was nevertheless not disabled because there was work he could perform, *e. g.*, price tag ticketer, routing clerk, document preparer, and surveillance monitor (Tr. 21-23).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly account for all of a treating physician opinion, and (ii) failing to properly assess the consistency of his subjective statements. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairment of degenerative disc disease, as well as the nonsevere impairment of obesity (Tr. 18-19). The relevant medical evidence for this appeal reflects that the claimant has a history of back pain going back to 1997, with exacerbation in 2007, but that he was able to work until a more recent injury in 2018. The claimant presented to Dr. J. Scott Clark, DO, with complaints of low back pain in November 2018. He reported that it was constant and moderate, and he had a positive straight leg raise test upon exam (Tr. 258-259). An x-ray from November 21, 2018 revealed no acute fracture or subluxation of the lumbar vertebral bodies, but mild disc space narrowing at L5-S1 (Tr. 270). An MRI conducted on January 2, 2019 revealed mild degenerative changes involving the lumbar spine with a chronic-appearing disc protrusion involving the L5/S1 and L4/5 levels, as well as moderate bilateral and left neural foraminal stenosis involving the L5/S1 and L4/5 levels respectively (Tr. 274-275, 321-322).

At a January 2019 exam, he again had a positive straight leg raise test on exam and was referred to neurosurgery for continued low back pain in the mid and left mid lumbar spine (Tr. 256-257). Dr. Ryan Rahhal, M.D., at Neurosurgery Specialists, examined the claimant in February 2019. He reported to Dr. Clark that the claimant has chronic low back pain, almost certainly from lumbar disc degeneration, as well as bulging discs at L5-S1 and L4-5 which appeared chronic on the MRI, but which was without associated radiculopathy (Tr. 263). Dr. Rahhal prescribed physical therapy and a series of epidural steroid injections, noting that they would try their best to avoid surgical treatment although they might consider it at some point (Tr. 263-266, 276). He received his first injection on February 25, 2019 (Tr. 284-287).

On March 8, 2019, Dr. Christopher Sudduth, M.D., conducted a physical examination of the claimant (Tr. 289-296). Dr. Sudduth's impression was that the claimant had decreased range of motion of the lumbar spine with lumbar spine pain on range of motion assessment, but that he had full range of motion throughout otherwise (Tr. 292). Specifically, he noted that the claimant could generally grasp and finger, and that he was able to squat and rise from that position, rise from a sitting position without assistance, and get up and down from the exam table without difficulty, as well as heel/toe walk and tandem walk. However, he could stand but not hop on either foot bilaterally (Tr. 291). Exam worksheets indicate the reduced range of motion of the back, as well as positive straight leg raise tests (Tr. 293).

On April 5, 2019, Dr. Rahhal's treatment notes indicated that the claimant had undergone two steroid injections so far but they had not been beneficial, and that results

5

from physical therapy had not brought any sort of lasting relief. He nevertheless had normal strength and sensation on exam, as well as a symmetric gait, and no radiculopathy (Tr. 300). Dr. Rahhal stated that he had had a "long conversation" with the claimant, telling him that they were approaching a time to decide whether to have surgery, and the claimant reportedly wanted more time to think about it. They agreed to revisit the question of surgery in six weeks (Tr. 300). An x-ray of the lumbar spine that same day revealed degenerative disc disease of the lower lumbar spine with facet osteoarthritis (Tr. 301). On May 13, 2019, the claimant was discharged from physical therapy. He had attended eight sessions, but physical therapy was discontinued because he had not returned to scheduled therapy visits (Tr. 304-319).

On July 26, 2019, Dr. Aaron McGuire, D.O., evaluated the claimant as to his lumbar spine injury (Tr. 324-326). Dr. McGuire noted palpable muscle spasms in the bilateral paraspinal musculature from L1 through S1, as well as multiple palpable trigger points throughout the lumbar spine and restricted range of motion "in all planes" (Tr. 325). He noted that the claimant demonstrated weakness in the lumbar flexors and extensors, as well as bilateral lower extremities (Tr. 325). The straight leg raise test was negative, although he was positive for tenderness and pain (Tr. 325). Dr. McGuire assessed the claimant with acute traumatic injury to the lumbar spine resulting in anatomical abnormalities, citing to the MRI scan (Tr. 325). He opined that the claimant had been temporarily totally disabled since November 17, 2018, and that he would remain so for an undetermined period of time pending further medical evaluation and treatment (Tr. 326). He also recommended further evaluation from a board-certified spine specialist (Tr. 326).

State reviewing physicians determined that the claimant could perform light work with no additional manipulative, postural, or environmental limitations (Tr. 60-61, 73-74).

At the administrative hearing, the claimant testified that he stopped working due to pain in his lower back (Tr. 39). In a discussion regarding back surgery, the claimant testified that his surgeon did not recommend it but had left the decision up to him, and he had decided against it (Tr. 39). He was not aware of any work restrictions (Tr. 40). He testified that he did not really get relief from either the steroid injections or the physical therapy (Tr. 40). He stated that he always has minimal pain, but that if he does an activity that causes it to flare up, he has to recline or lay down, and that he reclines approximately three quarters of the day (Tr. 41, 48). He indicated that the pain largely stays in his lower back, but occasionally is also down his right leg (Tr. 41). When asked, he stated that he gets muscle spasms two to three times per month (Tr. 42-43). As to pain management, he testified that he manages his activity level so that he can take only over-the-counter medication, and that he uses heating pads and ice packs (Tr. 43). He testified that he can sit approximately twenty minutes at a time, stand about thirty minutes at a time, and lift about twenty pounds if he does not have to bend or squat (Tr. 45-46). He stated that he only drives less than a mile down the road to the store, that he can do meals in the microwave but not big meals, that he helps his wife with dishes but cannot help with vacuuming, and that he sometimes accompanies his wife grocery shopping (Tr. 47).

In her written opinion at step four, the ALJ summarized the claimant's hearing testimony, and further provided a thorough summary of the medical evidence in the record. In particular, she summarized the reports from Dr. Sudduth and Dr. McGuire, as well as

the treating notes from his various physicians and the objective testing performed. She found the opinions of the state reviewing physicians, *i.e.*, that he could perform a full range of light work, generally persuasive, noting the evidence of record and that such a level of functioning was consistent with the record as a whole. She further noted that surgical intervention had not been recommended, he had normal strength and sensation and normal range of motion aside from his back, and a normal gait without the need for an assistive device (Tr. 21). She agreed that the claimant experienced pain due to his severe impairment, but again noted that surgery had not been recommended, that he only took over-the-counter pain medication, and physical examinations supported a finding that he could perform a reduced range of work (Tr. 21). She thus concluded that the claimant was not disabled (Tr. 21-23).

The claimant first contends that the ALJ erred in evaluating Dr. McGuire's consultative exam from July 2019. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding

8

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). But when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The claimant's specific complaint is that the ALJ failed to acknowledge, much less address, Dr. McGuire's statement that the claimant was temporarily totally disabled beginning November 17, 2018. But under the new regulations, as the Commissioner points out, statements that a claimant is or is not disabled, or able to perform regular/continuing work, are considered "inherently neither valuable nor persuasive" and the Commissioner "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c)(i). Accordingly, the ALJ did not err in failing to recite or discuss this opinion. Moreover, the ALJ clearly did *consider* this opinion as she specifically noted the claimant's weakness in his lower extremities, restricted range of motion in his back, and negative straight leg raise tests (Tr. 21). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. In this case, the Court finds

that the ALJ set out the appropriate analysis, and cited evidence supporting her reasons, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. Accordingly, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing Dr. McGuire's opinion. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation omitted).

Next, the claimant contends that the ALJ erred in analyzing his subjective statements, particularly as related to his pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the

of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *10.

The Court notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). The claimant contends this is evidence that the ALJ used boilerplate language and avoided providing any specific

---

factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

reasons for finding his testimony not consistent. He asserts that his testimony *is consistent* with the objective testing (MRI and x-rays) in the record, that he could not afford prescription medication, and that the ALJ improperly stated that Dr. Rahhal had not recommended surgery. In assessing the evidence at step four, however, the ALJ *did provide* reasons for finding the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. For example, his only physical limitations generally appeared to be a reduced range of motion of the back, and even with that, he retained strength and had otherwise normal range of motion and a steady gait. Additionally, the claimant testified that he did not *need* additional prescription pain medication with his activity level (Tr. 43). And while it is true that the claimant had discussions with Dr. Rahhal about surgery, there is nothing in the record to suggest that Dr. Rahhal recommended surgery for the claimant. Though perhaps sparse in evidence *and* discussion, there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and her evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

Contrary to the claimant's argument, the Court finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that he could perform a limited range of light work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work

level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citation omitted).  The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do.  *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").  The Court thus finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC.  *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**